# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| CASSANDRA COX, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 2:18-cv-04045-NKL |
| CALLAWAY COUNTY, MISSOURI, et al., | ) ) ) ) |
| Defendants. | ) ) ) |

## ORDER

Pending before the Court are Plaintiff Cassandra Cox's Motion to Exclude Certain Opinions of Dr. Conrad Balcer, Doc. 149, and Defendants' Motion to Exclude Testimony of Dr. Joel Blackburn, Doc. 154. For the following reasons, Plaintiff's motion to exclude Defendants' expert's opinions, Doc. 149, is granted in part and denied in part, and Defendants' motion to exclude Plaintiff's expert's opinions, Doc. 154, is granted in part and denied in part.

**I.      Background**

Plaintiff Cassandra Cox filed suit against defendants Callaway County, Missouri; the Callaway County Sheriff's Department; and various employees of the Callaway County Sheriff's Department in their individual and official capacities. Doc. 132 (First Amended Complaint). The lawsuit arises out of Cox's arrest by the Fulton Police Department for suspected possession and use of illegal drugs including methamphetamines, and her subsequent transfer to the Callaway County Jail. On February 28, 2016, while in the custody of Defendants, Cox required emergency medical assistance. Cox alleges that she suffered from a seizure and heart attack which was caused because the Defendants ignored her serious health condition, resulting in severe and permanent

damage to her heart and brain. Plaintiff seeks to present the expert opinion of Dr. Joel Blackburn and Defendants seek to present the expert opinions of Dr. Conrad Balcer. Each has moved to strike the testimony of their opponent's expert.

## II. Discussion

Federal trial judges have "broad discretion" in making decisions about the admissibility of expert testimony. *Bradshaw v. FFE Transp. Servs., Inc.*, 715 F.3d 1104, 1107 (8th Cir. 2013). Under Federal Rule of Evidence 702 and the guidance set forth in *Daubert*, expert testimony should be liberally admitted. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014) (citing *U.S. v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011) (holding that doubts about usefulness of expert testimony are resolved in favor of admissibility)); *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (holding that expert testimony should be admitted if it "advances the trier of fact's understanding to any degree"); *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (Rule 702 "clearly is one of admissibility rather than exclusion"). "As long as the expert's . . . testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Id.* (citing *Daubert*, 509 U.S. at 590, 596). Exclusion of expert opinion is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury." *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997).

Even so, pursuant to *Daubert*, the Court's role as "gatekeeper" in determining the admissibility of expert testimony requires the Court to conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93. "The main purpose of *Daubert*

2

exclusion is to prevent juries from being swayed by dubious scientific testimony." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011). This question of whether "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand" is known as the "reliability and relevancy" test. *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)).

When making the reliability and relevancy determinations, a court may consider: (1) "whether the theory or technique can be or has been tested"; (2) "whether the theory or technique has been subjected to peer review or publication"; (3) "whether the theory or technique has a known or potential error rate and standards controlling the technique's operation"; and (4) "whether the theory or technique is generally accepted in the scientific community." *Russell*, 702 F.3d at 456 (citing *Daubert*, 509 U.S. at 592–94). The *Daubert* standard is "flexible" and the above factors are guidelines rather than "a definitive checklist." *Jaurequi v. Carter Manufacturing Company, Inc.*, 173 F.3d 1076, 1082 (8th Cir. 1999). The expert's testimony must at the very least satisfy "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," but "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire*, 526 U.S. at 151, 153. The party seeking to admit expert testimony has the burden of establishing the admissibility of their experts' testimony by a preponderance of the evidence. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (citing *Daubert*, 509 U.S. at 592).

### A. Plaintiff's Motion to Exclude Dr. Conrad Balcer

Dr. Conrad Balcer is a licensed cardiologist with over thirty years of medical experience. *See* Doc. 150-2 (Dr. Balcer's C.V.). Plaintiff seeks to exclude certain opinions of Dr. Balcer,

generally described as opinions related to "Fit for Confinement" examinations and specifically, the standard of care for "Fit for Confinement" examinations, the appropriateness of the correctional officers and Callaway County Jail's response to Cox's condition while she was in the custody there, and what in fact her condition was during that time.

Plaintiff argues that Dr. Balcer has not reviewed the necessary evidence nor does he have the relevant qualifications such as education or experience in training correctional officers, providing care to inmates, or in performing Fit for Confinement examinations. Defendants have stated that Dr. Balcer "does not attempt to offer opinions regarding the actions of the Callaway County Jail employees," but rather he "limits his opinion to medical issues for which he is a trained expert." Doc. 163, at 1, 3.

The nebulous nature of Plaintiff's arguments requires the Court to look at the specific opinions identified by Plaintiff rather than all opinions that might relate to the conduct of the Callaway County defendants. The Court turns first to Dr. Balcer's statement that, "[g]iven this patient's age and lack of complaint, I would be less likely to believe a 'Fit for Confinement' examination was required." Pl.'s Ex. 12-1, at 2. Dr. Balcer's opinion about how Cox would likely have appeared to the staff at the Callaway County jail is based on Cox's medical records and Dr. Balcer's expertise as a doctor. While Dr. Balcer's has no experience with how correctional officers should respond, his opinion of how a medical expert would evaluate the condition of Cox is relevant and potentially helpful to a jury. However, a correctional officer knows the risks of being incarcerated and Dr. Balcer does not. Therefore, the Court will permit Dr. Balcer to testify whether he, as a medical profession confronted with these symptoms, would recommend a medical examination. If a doctor would not seek an exam, a correctional officer is less likely to have understood the seriousness of Cox's medical condition. But the Court will not permit Dr. Balcer

to testify that a "Fit for Confinement" examination was needed. That specific examination requires some knowledge about the unique risks of prison life which Dr. Balcer does not have.

Plaintiff also takes issue with Dr. Balcer's statement that "[m]y opinion regarding Ms. Cox's medical condition . . . is that on February 26, 2016, she was arrested and, based upon her jail intake form, was given an opportunity to request medical care and did not avail herself of this." Pl.'s Ex. 12-1, at 5. Again, Dr. Balcer can properly opine about how Cox would likely have appeared when she came to the Calloway County jail, and the nature of her medical events while she was there. However, he also seeks to testify that Cox was given an opportunity to request medical care and she did not avail herself of medical care. The latter "opinion", regardless of how it is characterized, is unlikely to be helpful to the jury. While experts can normally rely on their own interpretation of the facts, if those facts are crucial and the expert does not explain how he decided to adopt those facts, the opinion is more likely to mislead the jury than to be helpful. *Clark v. Takata Corp.*, 192 F.3. 750 (7th Cir. 1999). Second, Dr. Balcer is no better qualified to decide this issue than is the jury. Assuming that the basis for his conclusion is that a Calloway County employee asked Cox if she wanted medical care and she was nonresponsive, there is nothing about his conclusion that is based on his medical expertise. As such, this opinion is not helpful to the jury and is not admissible.

Plaintiff also argues that Dr. Balcer has neither the qualifications nor did he review the necessary evidence to offer an opinion regarding the "standard of care" for a "Fit for Confinement" examination. Plaintiff takes particular issue with Dr. Balcer's use of a Google and literature search in supporting his opinion. Dr. Balcer need not have reviewed all the evidence in this case, it is enough that his opinion is based on his expertise and would be helpful to the jury. Dr. Balcer did not appear to rest his opinion on the standard of care for "Fit for Confinement Examinations"

solely on a Google search, and he explicitly stated that, in addition to his online literature search, his opinion was based on the fact that "[i]n [his] experience and observation, there is no standard of care for a 'Fit for Confinement Examination.'" Pl.'s Ex. 12-1, at 1. An expert opinion should not be discredited because an expert decides to provide additional support beyond her experience and observation by also conducting an online review of the literature in the field. Further, Plaintiff's own expert appears to agree with Dr. Balcer on this point. As such, Dr. Balcer's opinion on the standard of care is admissible.

Lastly, Plaintiff asserts that Dr. Balcer's opinion on Plaintiff's medical condition from when she was first arrested on February 26, 2016 to when she required emergency assistance on February 28, 2016 is unreliable. Plaintiff contends that Dr. Balcer's failure to review all of the evidence—including the depositions of the correctional offers or documents from the Callaway County Jail—leaves Dr. Balcer with insufficient factual support for his opinion and therefore undermines his ability to criticize Plaintiff's expert's opinion. As explained above, Dr. Balcer need not have reviewed all of the evidence to have an admissible opinion so long as it would be helpful to a jury. Dr. Balcer relied on his expertise and a review of the medical records to reach his conclusion about her likely condition and symptoms during the relevant time period, and his opinion to that extent is admissible.

### B. Defendants' Motion to Exclude Dr. Joel Blackburn

Dr. Joel Blackburn is a board-certified doctor with more than twenty years of experience including experience in correctional medicine. Plaintiff seeks to admit the opinion of Dr. Blackburn regarding Plaintiff's medical issues, the alleged policy and procedural violations by Defendants in their care and treatment of Plaintiff, and Defendants' alleged deliberate indifference to Plaintiff's medical needs. Defendants seek to exclude the opinions of Dr. Blackburn for being

6

beyond his scope of expertise, for lacking evidentiary foundation, and for being of no help to the jury.

Defendants argue that Dr. Blackburn lacks the requisite expertise to state admissible opinions regarding whether the actions of Callaway County employees violated policies, constituted deliberate indifference, or qualified as a breach of a ministerial duty. As to opinions on purported violations of Callaway County's policies, Defendants assert that Dr. Blackburn's opinion on whether any given policy was violated does not qualify as a medical opinion, and is merely his personal interpretation based on a plain reading of the meaning of each policy. Allowing the opinion of an expert is appropriate when it relates to "issues that are beyond the ken of people of ordinary experience." *United States v. Clapp*, 46 F.3d 795, 802 (8th Cir. 1995) (quoting *United States v. French,* 12 F.3d 114, 116 (8th Cir.1993)). However, "[w]here the subject matter is within the knowledge or experience of laymen, expert testimony is superfluous." *Id.*

In addition to his general medical experience, Dr. Blackburn has specialized knowledge in the field of correctional medicine. Dr. Blackburn served as Medical Director for Boone County Jail for over ten years, and in this role established protocols, policies, and procedures for the medical care of inmate patients. Pl.'s Ex. 12-5, Pl's Exhibit 12-4, at 3. In Dr. Blackburn's opinion, the alleged policy and procedure violations were possible because many of Callaway County Jail's employees were insufficiently trained in understanding these policies. There is evidence that some employees did not fully understand these policies, and it is likely a jury would face similar challenges when interpreting these policies. *See, e.g.*, Ripsch Dep., Pl.'s Ex. 13-5, 86; Shoemaker Dep., Pl.'s Ex. 13-3, 63–71; McCown Dep., Pl.'s Ex. 13-4, 100–102. An informed opinion based on specialized experience with the internal medical policies of a jail would be helpful for explaining the intended meanings and requirements of the policies in question to a jury. As Dr.

7

Blackburn's testimony has "a reliable basis in [his] knowledge and experience of [the relevant] discipline," this opinion is admissible. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999).

Next, as to Dr. Blackburn's opinions regarding whether the action of employees constituted deliberate indifference or ministerial duty, Defendants assert that Dr. Blackburn lacks the requisite experience and education to offer an opinion on these matters and that an opinion on these matters would be inadmissible legal conclusions. Generally, "questions of law are the subject of the court's instructions and not the subject of expert testimony." *United States v. Klaphake*, 64 F.3d 435, 438 (8th Cir. 1995). Plaintiff cites to *Helfin v. Stewart County, Tennessee* as evidence of at least one instance where an expert was allowed to testify about whether conduct was deliberately indifferent. *Heflin v. Stewart Cty., Tenn.*, 958 F.2d 709, 715 (6th Cir. 1992). Defendants cite instead to *Berry* and *Woods* as examples where testimony using the legal term deliberate indifference was excluded. *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994); *Woods v. Lecureux*, 110 F.3d 1215 (6th Cir. 1997) Taken together, "[a]lthough *Heflin* indicates that district courts can exercise some discretion in determining whether the proffered testimony is helpful to the jury, *Berry* teaches that a district court abuses its discretion when it allows a witness to define legal terms, especially terms that carry a considerable amount of legal baggage." *Woods*, 110 F.3d at 1220. Unfortunately, the dividing line between "legal baggage" and helpful opinions is not always clear.

In the Eighth Circuit, expert testimony containing a legal conclusion is generally not admissible. *Peters v. Woodbury Cty. Iowa*, 979 F. Supp. 2d 901, 922 (N.D. Iowa 2013). Specifically, "deliberate indifference" is not the kind of "commonly used" language or medical terminology that might be helpful to a jury. *Cf. U.S. v. Two Eagle*, 318 F.3d 785, 792–93 (8th Cir. 2003) (finding commonly used language permissible). However, Dr. Blackburn's testimony need not be excluded in its entirety. For example, he can opine on whether the Callaway County Jail

employees showed a lack of concern for plaintiff's medical needs or whether those employee's duties and actions were mandated by the policies in place or not. But Dr. Blackburn may not opine on whether Defendants were deliberately indifferent or breached a ministerial duty.

Defendants also argue that Dr. Blackburn's opinion on causation lacks evidentiary support as it incorrectly assumes that Plaintiff suffered from tachycardia throughout the time she was in the custody of Callaway County Jail, despite the fact that evidence suggests she was not suffering from tachycardia when first transferred to Callaway County Jail, and Plaintiff therefore cannot assert that her obvious medical condition should have been noticed and treated earlier. *See* PL.'s Ex. 13-2, at 113 (statement by Dr. Blackburn that tachycardia is determined by having a heart rate over 100 beats per minute); Pl.'s Ex. 10-2, at 1 (noting Plaintiff's heart rate as being 82, 84, and 84 at three time points on the morning she was transferred to Callaway County Jail). But Dr. Blackburn's opinion does not rest solely on whether Plaintiff presented with tachycardia the morning of her arrest, nor have Defendants shown that the evidence can only support a finding that there were no symptoms at any point for which Plaintiff should have received medical care. Dr. Blackburn's opinion states that he believes Plaintiff was suffering from tachycardia and other noticeable symptoms at the time she was transferred to Callaway County Jail as well as throughout her time under Defendants supervision, that Defendants should have noticed these symptoms, and that earlier medical attention could have prevented Plaintiff's injuries. Pl.'s Ex. 13-2, at 127–128, 178; Pl.'s Ex. 12-4, at 11, 20–22. Though Defendants may disagree with Plaintiff and Dr. Blackburn's interpretation of the facts, Dr. Blackburn explains the basis of his opinion and his explanation would be helpful to the jury because of his medical expertise, even if one aspect of his opinion is disputed. Defendants can cross examine Dr. Blackburn at trial about this alleged deficiency, but Dr. Blackburn's opinion on causation is admissible.

9

Defendants additionally argue that Dr. Blackburn's opinions on implicit or subconscious employee bias should be excluded as irrelevant. Defendants contend that implicit bias is subconscious and this is a case about deliberate indifference which requires a conscious disregard for a known medical need. Plaintiff responds that Dr. Blackburn's opinions regarding implicit bias are relevant to her failure to train claim because according to Dr. Blackburn, implicit bias is known to cause worse medical care and Defendants' failure to address this known danger is evidence of deliberate indifference to the health of their inmates.

"To be individually liable for failing to train [] subordinates, [an official] must have received notice of a pattern of unconstitutional acts committed by subordinates, demonstrated deliberate indifference to or tacit authorization of the offensive acts, and failed to take sufficient remedial action—and the failure must have proximately caused [plaintiff's] injury." *Audio Odyssey, Ltd. v. Brenton First Nat'l Bank*, 245 F.3d 721, 742 (8th Cir. 2001) (quotation marks and citation omitted). Plaintiff effectively claims, without legal authority, that Defendants' conscious choice not to provide implicit bias training is a constitutional violation when medical needs are not met by the Calloway County employees. While such training is a laudable practice, the Court cannot say that the failure to provide implicit bias training is evidence of deliberate indifference on this record. There is no evidence that has been presented to the Court that subordinates in the Calloway County system were denying medical care to inmates because their implicit bias was causing them to do so, much less that Calloway County was aware of specific instances when this was happening. To suggest that every injury that an inmate sustains as a result of not getting appropriate medical care is a constitutional violation because no implicit bias training was provided would upend the deliberate indifference standard firmly established by the Supreme Court.

Dr. Blackman's opinion on implicit bias is inadmissible as it is more likely to confuse rather than help the jury.

**III.  Conclusion**

For the reasons discussed above, Plaintiff's motion to exclude Defendants' expert, Doc. 149, is granted in part and denied in part, and Defendants' motion to exclude Plaintiff's expert, Doc. 154, is granted in part and denied in part.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: April 2, 2020
Jefferson City, Missouri