# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

CASSANDRA COX,               )
                                 )
          Plaintiff,     )
                                 )
v.                           )     Case No. 2:18-cv-04045-NKL
                                 )
CALLAWAY COUNTY, MISSOURI, et    )
al.,                             )
                                 )
          Defendants.   )
                                 )

## ORDER

This lawsuit arises out of Cox's arrest for suspected possession and use of illegal drugs including methamphetamines, and her subsequent treatment after being transferred to the Callaway County Jail. Cox alleges that Defendants' indifference to her medical condition at the jail caused her to suffer from a seizure and heart attack resulting in severe and permanent damage to her heart and brain.

Pending before the Court is Defendants' Motion for Summary Judgment, Doc. 151. For the following reasons, Defendants' motion for summary judgment is granted.

## I.    Facts[1]

Early in the morning of Friday, February 26, 2016, Officer Wisswell of the Fulton Police Department responded to a car accident where Cox was found in the driver's seat with the keys in the ignition and the car in drive and running. Pl's Exh. 10-2, at 6; DSOF 6.[2] Cox was sweating

---

[1]     In ruling on a motion for summary judgment, the Court must view all facts in a light most favorable to the nonmoving party, and that party receives the benefit of all reasonable inferences drawn from the facts. *Robinson v. Monaghan*, 864 F.2d 622, 624 (8th Cir. 1989).

[2]     Throughout this order, "DSOF" refers to Defendants' Statement of Undisputed Material Facts as in Doc. 152 (Suggestions in Support of Defendants' Motion for Summary Judgment).

profusely and disoriented or distracted. The car apparently had left the roadway and hit a pole. After performing several field sobriety tests, Wisswell placed her under arrest for suspected driving under the influence. DSOF 5, 9, 10.

Cox was taken by Wiswell to the Callaway County Hospital in Fulton, Missouri for a blood draw. DSOF 12. Cox signed a consent form authorizing the blood draw. After the blood draw, Cox was transported to the Fulton Police Department where a drug recognition expert evaluated Cox for suspected drug intoxication and determined she was under the influence of CNS stimulants and cannabis. DSOF 17, 18, 21. At that time, Cox was sitting in a chair, had redness around her nasal area, heat bumps in her oral cavity, slow reaction to light, she was disoriented, her speech was rapid, her face was flush, she had bloodshot and watery eyes, was having cyclic mood swings from crying to calm to upset, her blood pressure was elevated, and she had flaccid muscle tone. Pl's Exh. 10-2, at 1; PSOF 10.[3] Her pulse was taken and it ranged from 82–84, which is not consistent with Tachycardia. *See* Pl.'s Exh. 13-2, at 113 (statement by Plaintiff's expert that tachycardia is determined by having a heart rate over 100 beats per minute); Pl.'s Exh. 10-2, at 1. She did not complain of pain or any need for medical care. Cox was not otherwise evaluated by a medical professional. DSOF 24.

After approximately three hours in the custody of the Fulton Police Department, Cox was taken by Wisswell to the Callaway County Jail. As part of the transfer process, Wisswell completed a report indicating Cox had been arrested for DWI/Drugs, and that she had not requested medical

---

[3]    Throughout this order, "PSOF" refers to Plaintiff's Statement of Additional Material Facts as in Doc. 179 (Plaintiff's Response and Suggestions in Opposition to Defendants' Motion for Summary Judgment).

care. DSOF 26, 27. Defendant Skyler Kinney, a corrections officer for Callaway County Jail, accepted custody of Cox. DSOF 12, 25.

As part of the booking process, Defendant Glen Ripsch, also a corrections officer with the Callaway County Jail, filled out a Medical Information form. Pl.'s Exh. 1-1 (Jail Intake Form), at 2–3. The form has two sections, the Medical Questionnaire part and the Observation part. Ripsch filled out the Medical Questionnaire using information provided by Cox.[4] The form states Cox had prior mental or emotional problems for which she was receiving medication, that she had an iron deficiency, and that she was a current smoker. *Id.*, at 2; DSOF 30, 32. She also stated she had had a TB skin test.

The observation portion of the form noted that Cox was showing signs of depression such as crying and being non-communicative and silent, and was showing "abnormal signs of anxiety, shame, [or] fear" by having her head on the counter, and not being cooperative with the questionnaire. Pl.'s Exh. 1-1, at 3. Ripsch also stated Cox was displaying abnormal or bizarre behavior but he did not indicate she was hearing or seeing things not present. Pl's Exh. 13-5, at 14:24–15:4, 23:21–24:5; Pl's Exh. 1-1, at 2 (indicating lack of psychotic behavior). Both Kinney and Ripsch believed Cox was under the influence of drugs when accepted into the Callaway

---

[4]  While Cox seems to dispute whether the information on the intake form came from Cox, Doc. 179 at 18–19, the only reasonable inference is that it did. First, there is no explanation how Ripsch would know about her treatment for mental and emotional problems and her iron deficiency, other than Cox telling him. While Ripsch stated in the observation section of the intake form that Cox was non-communicative and silent, he did not say that she refused to answer questions. Also, Plaintiff's counsel treated the information on the Questionnaire as coming from Cox. Pl's Exh 13-5 (Depo. of Glen Ripsch), at 13, 22–23; Pl's Exh. 13-19 (Depo. of Calloway County), at 120–24. Finally, much closer in time to Cox's drug ingestion, Cox was sitting and answering questions posed by Officer Wisswell. *See* Doc. 10-2, at 9–11. No reasonable juror could conclude on this record that Cox did not provide the information contained in the Questionnaire.

3

County Jail, Pl.'s Exh. 13-8 (Depo. of Skyler Kinney), at 13–14, 37, 42, 56–57; Pl.'s Exh. 13-5 (Depo. of Glen Ripsch), at 15, but there were no signs of drug withdrawal. Pl's Exh. 1-1, at 2.

The policies and procedures of the Callaway County Jail require that "subjects displaying bizarre behavior as a result of drugs or alcohol shall be treated as a medical emergency" and that "[i]n cases of medical emergency, inmates shall be transported" to the hospital emergency room. Pl.'s Exh. 3-1, at §§ 2.04, 12.05. According to Cox's expert, Dr. Blackburn, Cox would also be displaying outward signs of sweating, tremors, feelings of doom, loss of appetite, shortness of breath, elevated heart rate, cognition and orientation issues, as well as pain and severe dehydration. Pl.'s Exh. 13-2 (Depo. of Dr. Joel Blackburn), at 83, 127–28, 152. Neither Kinney nor Ripsch requested that Cox receive a medical evaluation before being accepted for confinement in the Callaway County Jail. DSOF 28.

Following her intake into the jail, Cox made a statement that she wanted to die, and was placed in a separate cell near the correctional officers' front desk, was provided a green suicide prevention suit, and was placed on observation status. DSOF 35. While under observation, Cox was observed in regular intervals, resulting in seventy-one related log entries by the on-duty correctional officers from February 26, 2016 until Cox's departure from the jail on February 28, 2016. DSOF 39; Pl's Exh. 2-2.

While in the Callaway County Jail, Cox refused her lunch and dinner on Friday, February 26, 2016, apparently ate on Saturday, but did not eat her breakfast on Sunday, February 28, 2016. Pl's Exh. 2-1B. The Callaway County manual Section 10.02 required that in the event of an apparent hunger strike that "[if] the prisoner refuses the meal it shall be logged in the jail logs. If the problem becomes persistent, the prisoner shall be seen by a physician." Pl's Exh. 3-1, at § 10.02. Karhoff stated that "persistent" meal refusal refers to previous refusal of two meals. Pl's

4

Exh. 13-11, at 173–74. No medical examination or assistance was requested for Cox as a result of her refusal of meals. She also refused a shower saying she was cold. Pl's Exh. 13-19, Depo. of Callaway County), at 143.

On February 27 and 28, Cox asked to go to rehabilitation. *See* Pl's Exh. 13-11, at 108, but did not otherwise request medical assistance during her incarceration. On February 27, Cox's father called Karhoff twice and asked for Cox to be taken to the University of Missouri Psychiatric Center. Pl's Exh 13-20 (Depo. of Bruce Cox), at 23–25. He told Karhoff that she needed medications for her panic attacks. *Id.*, at 23–24. Karhoff told Cox's father that Cox was "not crazy enough" to be transferred to the hospital. *Id.*, at 25.

On Sunday, February 28, 2016, Cox was allowed out of her cell under the observation of Defendants Brittany Karhoff and Katie McCowan to make a phone call to her father. DSOF 44, 45. Shortly after Cox returned to her cell, Karhoff heard yelling coming from Cox's cell, and Cox was found sitting against the door. Karhoff had Cox's cell opened, and McCown called dispatch and requested an ambulance. DSOF 51, 52. Karhoff called for help, utilized ammonia inhalants, did a sternum rub, and turned Cox on her side. DSOF 54. Emergency medical technicians from the Callaway County Ambulance then arrived and were able to resuscitate Cox and transport her to a hospital. DSOF 56. Karhoff testified that she provided CPR to Cox, and she filed a report stating that she provided chest compressions. Pl's Exh. 13-11, at 147; Pl's Exh. 5-1 (Incident Report), at 6. Surveillance footage did not show whether Karhoff performed CPR, but that surveillance footage did not fully cover the area where Cox was located. Pl's Exh 13-20, at 222–25, 234–35. A report by McCown is silent on the issue of CPR, but Ripsch stated in his report that "[u]pon the insertion of the ammonia inhalant, it appeared to have no effect . . . Karhoff then began to preform [sic] chest compressions on Inmate Cox." Pl's Exh. 5-1, at 4.

5

Prior to the request for an ambulance, none of the correctional officers responsible for supervising Cox requested medical assistance or a medical examination for Cox.

Plaintiff Cassandra Cox filed her thirty-six count Complaint against defendants Callaway County, Missouri; the Callaway County Sheriff's Department; and various employees of the Callaway County Sheriff's Department claiming deliberate indifference to a serious medical need, *Monell* liability, state law negligence, and violation of the ADA and Rehabilitation Acts. Doc. 132 (First Amended Complaint).

## II.    Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Durham D &M, LLC*, 606 F.3d 513, 518 (8th Cir. 2010) (citing *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 810 (8th Cir. 2005)); Fed. R. Civ. P. 56(a). The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). While the moving party bears the burden of establishing a lack of any genuine issues of material fact, *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010), the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue of material fact for trial." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Id*. "Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled

to judgment as a matter of law." *Higgins v. Union Pac. R.R. Co.*, 931 F.3d 664, 669 (8th Cir. 2019) (quotation marks and citation omitted).

## III.    Discussion

### A.  Deliberate Indifference

#### 1.   Applicable Standard

 "It is well established that deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment." *Langford v. Norris*, 614 F.3d 445, 459 (8th Cir. 2010) (quotation marks and citation omitted). To prevail on a claim of constitutionally inadequate medical care, the plaintiff inmate must show that the defendants "act[ed] with deliberate indifference to the prisoner's serious medical needs." *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2005) (quoting *Estelle*, 429 U.S. at 104). Such claims have both an objective component and a subjective component. *Dulaney v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Specifically, the plaintiff must show (1) that he had an objectively serious medical need and (2) that prison officials subjectively knew of that need, but deliberately disregarded it. *Id.*

"To be objectively serious, a medical need must have been 'diagnosed by a physician as requiring treatment' or must be 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014)). If there is not a diagnosis at the time of the incident, then the need must be obvious to a layperson. *Jones v. Minnesota Department of Corrections*, 512 F.3d 478, 482 (8th Cir. 2008).

To be found "deliberately indifferent," an official must "'know[] of and disregard[]' a serious medical need or a substantial risk to an inmate's health or safety." *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016) (citations omitted). Constructive knowledge is not sufficient; instead,

Plaintiff ultimately must "show that [defendant] had been exposed to information concerning the risk and thus must have known about it," *Id.*, or that the risk was so obvious that knowledge can be inferred. *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015)

Deliberate indifference also requires Plaintiff to "prove that [each defendant] deliberately disregarded that risk by showing that [he or she] knew that his [or her] conduct was inappropriate in light of the risk." *Id.* (quotation marks and citation omitted). However, "a total deprivation of care is not a necessary condition for finding a constitutional violation: [g]rossly incompetent or inadequate care can also constitute deliberate indifference…." *Langford*, 614 F.3d at 460 (quotation marks omitted, citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)).

To prove deliberate indifference to a medical need, a plaintiff must show more than negligence, more even than gross negligence . . . ." *Langford*, 614 F.3d at 460 (quotation marks and citation omitted). "The subjective standard is akin to that of criminal recklessness: the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference before acting—or failing to act—with a conscious disregard for the risk." *Blair*, 929 F.3d at 987–88 (quotation marks and citation omitted). The Court must "measure the official's state of mind according to his knowledge at the time of the incident, without the benefit of hindsight." *Id.*, at 988 (quotation marks and citation omitted).

### 2. Individual Defendants

#### a. Official Capacity Claims

As an initial matter, Defendants move for dismissal of the official-capacity claims against the individual correctional officer defendants, arguing that the official-capacity claims are redundant of the direct claims against Callaway County. Because "a suit against a government officer in his official capacity is functionally equivalent to a suit against the employing

8

governmental entity," official-capacity claims against the government officials should be dismissed. *King v. City of Crestwood*, 899 F.3d 643, 650 (8th Cir. 2018) (quotation marks and citation omitted). Accordingly, the Court dismisses the official-capacity claims against Harrison, Ripsch, Karhoff, Kinney, Ollar, Maddox, Kelley, McCown, Shoemaker, McCormack, Tigner, Stokes, Ruediger, English, and Duenkel.

### b. Individual Capacity Claims

Cox claims that the individual defendants acted with deliberate indifference to her serious medical need because they did not obtain a medical examination for Cox based on her intoxication and drug withdrawal symptoms. Cox states that Defendants knew about these conditions based on her demeanor during the transfer process, her statements made while under supervision, her refusal of meals, and her overall appearance. Cox also suggests her mental health was a serious medical need. She contends that the Defendants should have referred her to a medical professional as a result of these serious needs and if they had done so, the medical professionals would have done a medical exam, the exam would have revealed Tachycardia, that this would have resulted in treatment, and that treatment would have prevented her heart attack. Each of the individual Defendants raise the defense of qualified immunity to these claims.

"In § 1983 actions, qualified immunity shields government officials from liability [in their individual capacities] unless their conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known." *Bishop v. Glazier*, 723 F.3d 957, 961 (8th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982))). Qualified immunity is available only with respect to federal claims. *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995); *see also, e.g.*, *Westerfield v. Lucas*, No. 07-3518,

2011 U.S. Dist. LEXIS 51148, at *40 n.20 (N.D. Ohio May 12, 2011) (holding that "qualified immunity does not apply to [a] state law claim").

The Court must consider two factors in analyzing qualified immunity: (1) whether the facts alleged show that the public official's conduct violated a constitutional right; and (2) whether the constitutional right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Id.*; *see also Hess v. Ables*, 714 F.3d 1048, 1051 (8th Cir. 2013) ("Qualified immunity is appropriate only if no reasonable factfinder could answer yes to both of these questions." (quotation marks and citation omitted)). "The 'clearly established' standard . . . requires that the legal principle . . . be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (citations omitted). Upon a defendant's raising the qualified immunity defense in a summary judgment motion, "the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated a clearly established right." *Bishop*, 723 F.3d at 961 (citation omitted). The "plaintiff bears the burden of proving that the law was clearly established." *Hess*, 714 F.3d at 1051.

### i.   Intake Officers Kinney and Ripsch

Cox argues that her symptoms at intake alerted defendants Kinney and Ripsch to her serious medical need to be evaluated or treated by a medical professional, but Kinney and Ripsch deliberately ignored her need.

The serious medical need identified by Cox during oral argument was intoxication and drug withdrawal. However, in her briefing she also implies that she had a serious medical need for mental health treatment. Regardless of which is considered, the Court finds there is insufficient

10

evidence to support a finding that even a layperson would recognize that her intoxication or mental health required a medical examination before admitting Cox to the jail.

First, common sense dictates that not all intoxicated persons must have a medical examination upon intake. There must be something out of the norm to alert an officer to a serious medical need related to intoxication. *Thompson v. King*, 730 F.3d 742, 748 (8th Cir. 2013) ("An officer does not lose the protections of qualified immunity merely because he does not react to all symptoms that accompany intoxication."). To determine when intoxication is sufficiently abnormal to be a serious medical need, the Court has compared cases where the Eighth Circuit has granted and denied qualified immunity based on external manifestations of intoxication. In *Thompson*, the Eighth Circuit found a transporting officer entitled to qualified immunity even though the prisoner fell asleep in the vehicle, slurred his words, and the officer knew that he had an empty prescription bottle that two days before had contained sixty pills. The prisoner was breathing normally, answered questions and there was no external evidence of injury. However, the Eighth Circuit in the same case found that an intake officer was not entitled to qualified immunity because the same prisoner could not answer questions during the intake process, had passed out in the booking area, was too intoxicated to sign anything, and the intake officer had to pound his fist to get the prisoner's attention. A fellow officer testified that anyone seeing the prisoner would know he needed medical help. *Id.* at 749.

In *Grayson v. Ross*, 452 F. 3d 802 (8th Cir. 2006), the Eighth Circuit found that an arresting officer was entitled to qualified immunity even though Grayson was "standing next to the creek, soaking wet, and reporting that his vehicle was going to 'blow up.' When [the officer] tried to arrest Grayson for driving while intoxicated, Grayson became combative. [The officer] struggling to gain control of Grayson, struck Grayson on the head with his duty weapon, and then Grayson

11

cooperated with the arrest." *Id.* at 806. The jail initially refused to take Grayson because of intoxication concerns, but the arresting officer said it would take a lot of time to transport the prisoner to the hospital. After the jail accepted transfer, the prisoner appeared calm and answered questions.

In *McRaven v. Sanders*, 577 F.3d 974 (8th Cir. 2009) the Eighth Circuit denied qualified immunity where officers knew the prisoner had been taking Seroquel, Hydrocodone, Depakote, and Ambien. He also had a prescription issued the previous day for ninety tablets of Chlorzoxazone, a muscle relaxer, and twenty-one pills were missing from the bottle. A drug influence evaluation found the prisoner's speech was slurred, his face was flushed, and his eyelids drooped. His pulse, blood pressure, and temperature were "down." The Eighth Circuit denied qualified immunity because of the defendants' knowledge of the type and likely quantity of drugs consumed and the physical findings from the drug evaluation. It distinguished *Grayson* because the Defendants in *Grayson* did not know the amount of drugs taken. *See Barton v. Taber*, 820 F.3d 958, 965 (8th Cir. 2016) (finding that "[a]lthough we can assume that most individuals arrested on intoxication-related charges are not in obvious need of prompt medical care," the detainee had an obvious medical need a layperson would recognize as requiring medical attention as he had fallen to the ground unresponsive, could only communicate with slurred speech, and could not walk independently).

While Ripsch stated that Cox was acting bizarrely and Calloway County policy requires a medical referral if bizarre behavior is caused by intoxication, the evidence does not support a finding that Cox was unable to walk, answer questions, maintain consciousness, or was otherwise displaying symptoms of severe intoxication. There was also no information available to Kinney or Ripsch about the quantity of drugs taken. Further, the officers were aware that Cox suffered from

mental illness, so any bizarre behavior was just as likely to be caused by her mental illness and not intoxication. A reasonable fact finder, therefore, could not find it would be obvious to a layperson that Cox had an obvious need for treatment by a medical professional based on her intoxication or drug withdrawal.

Even if the Court were to conclude that the evidentiary record supports a finding that Cox had a serious medical need as a result of intoxication, Cox presents no evidence that Ripsch and Kinney subjectively knew about the need and deliberately ignored it. In the absence of an obvious need for medical care, there is no inference that they knew of Cox's need and Cox has presented no evidence that they actually did know. *See Jones v. Minnesota Department of Corrections*, 512 F.3d 478, 482 (8th Cir. 2008). Indeed, at the time she had her blood drawn by medical personnel and was examined by a drug recognition expert, Cox had redness around her nasal area, heat bumps in her oral cavity, slow reaction to light, she was disoriented, her speech was rapid, her face was flush, she had bloodshot and watery eyes, she was having cyclic mood swings, her blood pressure was elevated, and she had flaccid muscle tone. Pl's Exh. 10-2, at 1. Yet none of these experts referred her for a medical exam or suggested that a medical exam was needed. Even if the symptoms identified by Cox's expert, Dr. Blackburn, were present at intake and could be observed by a lay person, Cox has not explained how they are sufficiently alarming, in ways identified by the Eighth Circuit, to make it obvious there was a need for immediate medical care.

As for her mental health, Cox did not suggest suicidal ideation to Ripsch during questioning, but immediately after being booked in, Cox went to make a phone call and an officer heard her make a suicidal statement. After that statement, Cox was placed in a special cell for observation and put in a suicide prevention suit. These measures were continued throughout the remainder of her incarceration. Thus, Cox has failed to show that any Defendant was deliberately

13

indifferent to her mental health. Furthermore, Cox has not explained how a Defendant could foresee that a failure to refer her to a mental hospital would cause or contribute to cause a heart attack.

As a matter of law, a fact finder could not conclude that Kinney and Ripsch knew Cox required medical intervention and consciously decided to provide none.[5] They are therefore entitled to qualified immunity.

### ii. Observation Officers Ripsch, Karhoff, Kinney, Ollar, Maddox, Kelley, McCown, Shoemaker, McCormack, Tigner, Stokes, Ruediger, English, and Duenkel[6]

On the record presented, the Court finds that no reasonable factfinder could conclude that the correctional officers who were charged with observing and logging Cox's status knew Cox had a serious medical need for a medical examination and deliberately ignored the need.

Even assuming the Defendants observed the symptoms of "metallic acidosis" or "rhabdomyolysis" which Dr. Blackburn described, there is no evidence Defendants knew these diffuse symptoms were evidence of drug withdrawal or intoxication that posed a serious risk of harm to Cox. Even Dr. Blackburn indicated that it was prior methamphetamine use and poor nutrition that contributed to her decline and there is no evidence that the Defendants knew of that

---

[5]     As to the issue of drug withdrawal, the Court has located no evidence in the record that, at the time of booking or otherwise, Cox was displaying unique and separate symptoms of drug withdrawal. Thus, the same evidence that is considered above to be insufficient to show a serious medical need based on intoxication is also insufficient to establish a serious medical for drug withdrawal. Nor is there evidence that Ripsch and Kinney consciously suspected drug withdrawal and deliberately ignored Cox's medical need.

[6]     When discussing the "observation" defendants, Plaintiff sometimes rely on one defendant's knowledge as evidence that other defendants had the same information or knowledge. This is not permitted. *Harvey v. Ward,* 352 F. Supp. 2d 1003 (DND 2005). However, because the Court finds even Plaintiff's broad recitation of the evidence is insufficient to support a finding of deliberate indifference as to any of the Defendants, the Court will not parse out what information was available to each "observation" defendant.

history. At best, they knew she was arrested for driving under the influence of methamphetamine and she and her father sought rehabilitation or treatment for her panic attacks, or a referral to a psychiatric hospital. Even Cox and her father did not indicate she was in a physical crisis. Nor does declining a couple of meals and refusing a shower because she was cold suggest a need for immediate medical intervention, even if Calloway County policies were violated.

As for her mental health, Defendants provided Cox special protections as soon as they perceived she might harm herself. Cox has not provided any authority from the Eighth Circuit or elsewhere that would even suggest that a referral to a mental health facility was constitutionally required when threats of self-harm are perceived or when requested to do so by the prisoner or the prisoner's family. Finally, Cox has not explained how Defendants could foresee that a failure to refer her to a mental hospital would cause or contribute to cause a heart attack.

Nor does Cox's assertion that there may have been insufficiencies in maintaining the logs raise an inference that defendants knew she had a need for medical care and consciously disregarded that need. Bookkeeping deficiencies under these circumstances is not evidence that Defendants were trying to cover something up or were knowingly ignoring their Constitutional obligations.

Considering all the evidence in the light most favorable to Cox, the Court concludes that no reasonable juror could conclude these Defendants knew that Cox had a serious medical need and deliberately ignored it. "[D]eliberate indifference must be measured by the official's knowledge at the time in question, not by 'hindsight's perfect vision.'" *Schaub v. Vonwald*, 638 F. 3d 905, 915 (8th Cir. 2010) (citations omitted).

### iii.    Responding Officers Karhoff and McCowan

15

The next question is whether there is a submissible deliberate indifference claim against Karhoff and McCowan for failing to perform CPR after they found Cox in her cell. Karhoff testified she started performing necessary CPR to Cox after she collapsed and prior to the arrival of medical assistance, Pl.'s Exh. 13-11 (Depo. of Brittany Karhoff), at 146–48. However, Cox seems to suggest that the CPR was not properly performed. Doc. 179, at 25, 65; PSOF 39.

"An officer trained in CPR, who fails to perform it on a prisoner manifestly in need of such assistance, is liable under § 1983 for deliberate indifference." *McRaven v. Sanders*, 577 F.3d 974, 983 (8th Cir. 2009) (citing *Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001)). But in *Tlamka* the officers in question did nothing and there was no explanation for their lack of action. *McRaven* involved similar facts. In contrast, Karhoff and McCowan did not stand by idly when they heard Cox yell and fall to the floor. They called an ambulance, utilized ammonia inhalants, did a sternum rub, and turned Cox on her side. At most, the actions taken by defendants Karhoff and McCown might suggest negligence. While a sternum rub/chest compression may or may not be "proper" CPR, they are not evidence of deliberate indifference.

In sum, Cox has not established that there is a triable issue as to whether any of the individual defendants deliberately disregarded any serious medical needs at any point while under the supervision of the Callaway County jail.

### 3. Calloway County

Because the Court has found there is not a submissible deliberate indifference claim against any individual defendant, no claim against Calloway County survives. *Johnson v. City of Ferguson*, 926 F.3d 504, 506 (8th Cir. 2019) (quotation marks and citation omitted); *Whitney v. City of St. Louis, Missouri*, 887 F.3d 857, 861 (8th Cir. 2018) ("absent a constitutional violation by a city employee, there can be no § 1983 or *Monell* liability for the City"); *City of Ferguson*,

16

926 F.3d at 506 (8th Cir. 2019) (holding that police chief could not be liable where no constitutional violation occurred).

### B. ADA and Rehabilitation Act Claims

Plaintiff's First Amended Complaint additionally included claims against Callaway County under the Americans with Disabilities Act of 1990 (ADA), § 203, 42 U.S.C.A. § 12133 and Rehabilitation Act of 1973, § 505(a)(2), 29 U.S.C.A. § 794a(a)(2). Cox claims that Calloway County discriminated against her because it (1) failed to accommodate Plaintiff's disability by not screening for mental illness or educating officers regarding mental illness; (2) failed to adopt a policy to protect people with mental illness; (3) discriminated against Plaintiff in a mental health crisis situation by not accommodating her disability; (4) failed to conduct a self-examination plan or modify its programs to accommodate the needs of persons with mental impairments; and (5) failed to train and supervise deputies regarding individuals with mental impairments. *See* Doc. 132, ¶¶ 543, 561.

In order to recover compensatory damages on ADA and Rehabilitation Act claims, a plaintiff is required to prove deliberate indifference. *Meagley v. City of Little Rock*, 639 F.3d 384, 389–90, (8th Cir. 2011) ("The district court decided that deliberate indifference was the appropriate standard for showing intentional discrimination in this type of case. A number of other circuits have so ruled, and we agree."). Under the deliberate indifference standard, intentional discrimination "does not require a showing of personal ill will or animosity towards the disabled person," but instead can be "inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Meagley*, 639 F.3d at 389.

17

First, the Court finds that each of these alleged acts of discrimination are inherently claims of inadequate medical care which cannot be the basis of an ADA claim. *A.H. v. St. Louis County Missouri,* 891 F.3d 721, 729–39 (8th Cir. 2018). Second, there is no evidence that Calloway County was aware of a strong likelihood that its failure to adopt the policies identified by Cox would result in a violation of federal law. While Cox claims that Calloway County did not identify any facts to show Cox's ADA claims are not submissible, the Court disagrees. Calloway County's briefing fairly raises facts to indicate Calloway County and its employees were not aware of any need for these policies because its employees were not being deliberately indifferent to Cox's medical needs, whether they were based on a disability or otherwise. Tellingly, Cox, who has the burden of proof on this issue at trial, does not identify any facts to the contrary.

Finally, Cox argues that the deliberate indifference standard does not apply to her claims for equitable relief and therefore she is not required to satisfy the deliberate indifference standard. But Cox is no longer incarcerated in the Callaway County jail and therefore does not have standing to raise these equitable claims. *Meuir v. Greene County Jail Employees,* 487 F.3d 1115, 1119–20 (8th Cir. 2007).

Accordingly, Defendant Callaway County is entitled to summary judgment as to Plaintiff's ADA and Rehabilitation Act claims.[7]

---

[7] To the extent Cox is seeking a specific accommodation, Plaintiff does not identify one that Calloway County failed to provide nor how its failure to provide this accommodation would have been the result of deliberate indifference. The only specific accommodations requested by Plaintiff were to not be put in a green suit and observation like all other inmates that make suicidal statements, and Plaintiff's father's requested that Cox be sent instead to the University of Missouri Psychiatric Center. Pl.'s Exh. 13-11 (Depo. of Brittany Karhoff), at 60–62. Defendants did not need to agree to Plaintiff's request to be transferred or to be exempt from certain suicide prevention policies where the alternative was independently justifiable, as in this case where the use of observation and the green suit were not the result of deliberate indifference to Cox's needs, but rather were to ensure Cox's safety. *See Trevino v. Woodbury Cty. Jail*, 623 F. App'x 824, 825 (8th Cir. 2015) (finding summary judgment dismissing ADA claim on the merits appropriate where

## C. State Law Negligence Claims

Because the Court has found in favor of the Defendants on all federal claims in this lawsuit and wishes to avoid unnecessary decisions of state law, the Court elects not to exercise supplemental jurisdiction over the state law claims and they are dismissed without prejudice. 28 U.S.C. § 1367 (Federal courts may decline to exercise jurisdiction over state law claims if it "has dismissed all claims over which it has original jurisdiction"); *Elmore v. Harbor Freight Tools USA, Inc.*, 844 F.3d 764, 767 (8th Cir. 2016).

## IV.    Conclusion

For the reasons discussed above, Defendants' motion for summary judgment, Doc. 151, is granted.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: May 21, 2020
Jefferson City, Missouri

---

evidence provided that wheelchair-bound inmate was put in an isolated cell for his safety because he would have been an easy target for violent inmates in the general population, and said inmate did not respond with evidence of intentional disability discrimination or deliberate indifference to his rights under Title II of the ADA); *Vaughn v. Gray*, 557 F.3d 904, 908–09 (8th Cir. 2009) (inmate must demonstrate objectively serious medical needs defendants knew of, but deliberately disregarded; it is not Eighth Amendment violation when defendants, in exercising professional judgment, refuse to implement inmate's requested course of treatment). Accordingly, Defendant Callaway County is entitled to summary judgment as to Plaintiff's ADA and Rehabilitation Act claims.